IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, et al., | * | |
| Plaintiffs, | * | Civil Action No.: RDB 06-329 |
| v. | * | |
| WILLIAM COSTELLO, et al., | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

The Plaintiffs United States of America and the State of Maryland ("Plaintiffs") have filed a Complaint against William and Janice Costello ("the Costellos"), the Permit Coordinators, Inc. ("PCI"), and Scott Mielke ("Mielke") (collectively, "Defendants") for alleged violations of the Clean Water Act, 33 U.S.C. §§ 1251, *et seq.*, the Rivers and Harbors Act of 1899, 33 U.S.C. §§ 401, *et seq.*, and Md. Code Ann. Envir. § 16-202(a). Pending before this Court is the Motion to Dismiss filed by Defendants PCI and Mielke (Paper No. 13).[1] This Court has jurisdiction pursuant to 28 U.S.C. § 1331. The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons stated below, Defendants' Motion to Dismiss is DENIED.

### BACKGROUND

The facts are viewed in a light most favorable to the Plaintiffs. The Costellos own a piece of property ("the Site") in Annapolis, Maryland, that is abutted by Whitehall Creek, a tidal,

---

[1] During a telephonic conference held December 12, 2006, Defendants PCI and Mielke clarified that their Motion seeks only to dismiss claims for injunctive relief. They do not request dismissal of Plaintiffs' claims for civil penalties or damages.

navigable waterway. On October 27, 1982, the previous owners of the Site obtained a Wetlands License from the Maryland Board of Public Works authorizing them to construct an erosion control structure, called a revetment, extending no more than ten feet channelward of the mean high water line. On November 2, 1986, the previous owners also obtained a permit from the Secretary of the Army authorizing them to place approximately 1000 tons of "rip rap" along the shoreline no more than ten feet channelward of the mean high water line. The two permits expired on December 1, 1983, and December 31, 1986, respectively.

On September 19, 2003, storm surges from Hurricane Isabel caused water to pour over the Site's revetment, eroding the bank and eventually causing the structure to collapse. The next day, September 20, 2003, Maryland issued an Expedited Tidal Wetlands License to Repair or Replace Structures Damaged by Hurricane Isabel ("the Isabel Permit") authorizing the repair or replacement of structures in existence before the hurricane. One condition of the Maryland Isabel Permit was that a new structure must have the same location and dimensions as the previously existing structure. On September 22, 2003, the United States Army issued a Public Notice enabling the public to repair or replace previously authorized structures for the purposes of the Clean Water Act section 404. Like the Isabel Permit, the Public Notice required that new structures be in compliance with the original permit conditions.

On September 22, 2003, Defendants PCI and Mielke, an engineer employed by PCI, entered into an agreement with the Costellos to prepare permit applications and to design and construct a new revetment at the Site. Four days later, Defendants applied to the Anne Arundel County Department of Permits and Inspections ("the County") for a permit to reconstruct a revetment and repair the bank that had been eroded. Attached to the application was an affidavit

2

by Defendant William Costello certifying that the proposed work was an exact replacement of, and in the same location as, the previous revetment.  The September 26, 2003, application was granted and a permit was issued to Defendants.  From December of 2003 through March of 2004, the Defendants built a revetment that extends approximately 53 feet channelward of the mean high tide line, well beyond the 10 feet authorized by the permits and covering State wetlands.

In the process of constructing the revetment during those four months, the Defendants used earth-moving equipment to discharge fill material, including rock, dirt, and sand, into Whitehall Creek without a permit.  These discharges allegedly created an obstruction to the navigable waters of the United States.  They also resulted in the filling of State wetlands without a license.

On February 8, 2006, the United States of America and the State of Maryland filed a Complaint in this Court alleging that Defendants violated the Clean Water Act ("CWA"), the Rivers and Harbors Act of 1899 ("RHA"), and the provisions of Maryland's Code concerning permits to fill wetlands ("Maryland Wetlands Statute") (collectively, "the Statutes"), because the new revetment did not comply with the conditions of the emergency Isabel Permit.  Plaintiffs seek a variety of injunctive relief as well as civil penalties.[2]  Defendants PCI and Mielke filed the instant Motion to Dismiss on March 7, 2006.  They contend that Plaintiffs' claims for injunctive relief are improper as against them, because they have no right to or interest in the Site and because their allegedly unlawful conduct has ceased.  (Paper No. 13.)  On March 21, 2006, the

---

[2] This case was stayed pending alternative dispute resolution conferences with a Magistrate Judge of this Court.

United States filed a Response (Paper No. 19), which the State of Maryland later incorporated (Paper No. 25).[3] On June 21, 2006, Defendants William and Janice Costello filed a Cross-Claim against Defendants PCI and Mielke, alleging violation of the Maryland Consumer Protection Act, breach of contract, negligence, and negligent misrepresentation for failing to obtain the appropriate permits and design a revetment complying with the permits. (Paper No. 29). On December 12, 2006, the Court conducted the previously noted telephone conference on the record at which time the Defendants PCI and Mielke clarified the scope of the subject Motion to Dismiss. The Court allowed the parties to submit supplemental briefing after this conference. (Papers No.44-46.)

## STANDARDS OF LAW

"In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff[s]." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993) (citing *De Sole v. United States*, 947 F.2d 1169, 1171 (4th Cir. 1991)). A motion to dismiss "should only be granted if . . . it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.,* 248 F.3d 321, 325 (4th Cir. 2001); *see also Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005).

**I.     The Clean Water Act**

---

[3] Defendants are correct that the State of Maryland did not file its Response in a timely manner. (*See* Defs.' Reply to Maryland's Opp'n, Paper No. 27.) Responses to the Motion to Dismiss were due by March 24, 2006, but the State did not file its Response until April 6, 2006. Because the State merely incorporated the United States' arguments, however, this Court will accept the late pleading and treat the United States' substantive Response (Paper No. 19) as if it were filed by both Plaintiffs.

"Congress's authority over the channels of commerce is . . . broad enough to allow it to legislate, as it did in the Clean Water Act, to prevent the use of navigable waters for injurious purposes." *United States v. Deaton*, 332 F.3d 698, 707 (4th Cir. 2003); *see also United States v. Wilson*, 133 F.3d 251, 256 (4th Cir. 1997) (citing *United States v. Rands*, 389 U.S. 121, 122-23 (1967)).  The purpose of the CWA[4] is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters."  33 U.S.C. § 1251 (2006).  Section 301 of the CWA generally prohibits the discharge of pollutants[5] into navigable waters without a permit.  *Id*. § 1311.  Pursuant to section 404, a permit can be obtained from the Army Corps of Engineers ("the Corps") "for the discharge of dredged or fill material into the navigable waters."  *Id*. § 1344.  Section 309 authorizes civil actions in federal district courts against individuals who violate the provisions of section 301.  *Id*. § 1319(b).  Remedies include civil penalties and a broad range of injunctive relief, including mitigating and restorative measures.  *Id*. § 1319(b), (d).

## II.     The Rivers and Harbors Act of 1899

"The Rivers and Harbors Act of 1899 was enacted to provide penalties for creating obstructions or nuisances in the navigable waters of the United States."  *Steuart Transp. Co. v. Allied Towing Corp*., 596 F.2d 609, 614 n.5 (4th Cir. 1979) (citing *United States v. Penn. Indus. Chem. Corp*., 411 U.S. 655, 663-66 (1973).  Section 10 of the RHA prohibits the construction of any structure that would obstruct the navigable waters of the United States without express Congressional authorization or a permit by the Corps.  33 U.S.C. § 403 (2006).  Section 12 of the

---

[4] The Clean Water Act is another name for the Federal Water Pollution Protection and Control Act.

[5] "Pollutants" include dredged spoil, rock, sand, and cellar dirt.  33 U.S.C. § 1362(6).

RHA identifies penalties for violations of section 403, including injunctive relief and criminal penalties. *Id*. § 406.

### III.    Maryland's Wetlands Statute

States share responsibility with the EPA in administering the CWA's permitting systems. 33 U.S.C. § 1251(b); *see also Natural Res. Def. Council v. U.S. Envtl. Prot. Agency*, 16 F.3d 1395, 1400 (4th Cir. 1993). In Maryland, section 16-202(a) of the Environmental Article of the Code prohibits the dredging or filling of State wetlands without a license. Md. Code Ann. Envir. § 16-202(a) (Michie 2005). "State wetlands" are defined as "any land under the navigable waters of the State below the mean high tide," and "filling" activities include storm drainage projects. *Id*. § 16-101(f)(2), (n). Section 16-502 authorizes the Maryland Department of the Environment to seek injunctive relief and civil penalties for violations of section 16-202(a).

## DISCUSSION

Plaintiffs claim that Defendants violated provisions of the CWA, the RHA, and the Maryland Wetlands Statute by constructing a replacement revetment on the Site that exceeded the previously authorized permit dimensions and by discharging fill material and other pollutants into navigable waters. Plaintiffs seek civil penalties and injunctive relief. They ask this Court to enjoin Defendants "from discharging or causing the discharge of dredged or fill material or other pollutants into any waters of the United States except in compliance with the CWA and RHA" and "from placing any unauthorized structures or obstructions or performing any work waterward of the mean high water mark without first having obtained all requisite federal and state permits." (Compl. Prayer for Relief ¶¶ (a), (d).) Plaintiffs also ask the Court to require Defendants "to undertake measures . . . to effect complete restoration of the Site, including

removal of the unauthorized discharge/structure, and off-site mitigation for irreversible environmental damage." (*Id.* ¶ (b).)

Defendants PCI and Mielke, the engineers who designed the revetment and who were supposed to obtain federal and state permits, have moved to dismiss the claims for injunctive relief as to them. They argue that injunctive relief should not be imposed against them and raise two arguments in support of their position. First, they argue that because they have no property rights to the Site, they could not carry out any injunctions issued by this Court. (*See* Defs.' Mem. Supp. Mot. Dismiss 2-4.) Second, they argue that the injunctions would be moot, because "the alleged actions of these Defendants have all been completed, and these Defendants play no role in any current (or potential) alleged 'discharge' of pollutants, dredged or fill material." (*Id.* at 3-5.)

    **A.**    **Property Rights Argument**

First, Defendants PCI and Mielke allege that because they have no property rights in the Site, they could not exercise any control over the implementation of the injunctions. In support of this argument, the two Defendants cite *Bank v. Bank*, 23 A.2d 700 (Md. 1942), for the proposition that "[i]njunctive relief should be denied when it would be impossible for the injunction to be enforced." (Defs.' Mem. Supp. Mot. Dismiss 2-3.) In that case, a woman's ex-husband believed that the woman's parents were interfering with his relationship with her by helping and encouraging her to live away from him. *Bank,* 23 A.2d at 703. The Court of Appeals of Maryland declined to enjoin the woman's parents from supporting her, finding that no Maryland court had ever imposed such a limitation on parents and that the difficulty of enforcing the injunctive relief sought would outweigh any benefit. *Id.* at 704-05. This domestic

relations case is clearly distinguishable from the subject environmental action before this Court.

The environmental statutes providing the basis of this Court's jurisdiction give courts broad discretion in fashioning injunctive relief to achieve the statutory goals. *See, e.g., Weinberger v. Romero-Barcelo*, 456 U.S. 305, 318 (1982) ("We read the [Clean Water Act] as permitting the exercise of a court's equitable discretion, whether the source of pollution is a private party or a federal agency, to order relief that will achieve *compliance* with the Act." (emphasis in original)). The Defendants' reliance on a domestic relations case is misplaced in addressing the injunctive relief power of this Court to address environmental issues.

In actuality, the fact that the Defendants PCI and Mielke do not own the property in question does not affect this Court's statutory authority to issue injunctive relief against them. Plaintiffs correctly note that "in cases like this one the court is asked to order the restoration of navigable waters that no defendant owns. Instead, the lands beneath the tidal waters – where Defendants built the revetment – *are owned by the State*." (Pls.' Supplemental Opp'n Mot. Dismiss 2 (emphasis added).)  Even if the only access to the revetment is from the Costellos' abutting property, Plaintiffs argue that this Court can exercise its broad discretion in tailoring appropriate injunctive relief to achieve the goals of the statutes. Several courts have imposed injunctive relief on third-party contractors who did not have an interest in the property in question. *See United States v. Pozsgai*, 999 F.2d 719 (3d Cir. 1993) (ordering both landowner and hauler of fill material to restore the property); *United States v. Van Leuzen*, 816 F. Supp. 1171 (S.D. Tex. 1993) (enjoining both landowner and contractor from violating the CWA and RHA in the future); *United States v. Ciampitti*, 615 F. Supp. 116 (D.N.J. 1984) (enjoining both landowner and hauler from filling the subject wetlands in the future); *United States v. Weisman*,

489 F. Supp. 1331 (M.D. Fla. 1980) (ordering both landowner and engineering firm to restore the wetlands even though the landowner was to bear the costs).  Accordingly, the fact that PCI and Mielke do not have property rights in the Site does not preclude this Court from issuing injunctive relief against them or any defendant to ensure compliance with environmental statutes.

      **B.**      **Mootness Argument**

Alternatively, Mielke and PCI argue that any alleged violations they committed have ceased. Thus, they argue, the claims are moot and any injunctions would be ineffective.  The Supreme Court has held that "[a] case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (internal quotation marks omitted) (citing *United States v. Concentrated Phosphate Export Assn., Inc.*, 393 U.S. 199, 203 (1968)).  *See also Hirsch v. Green*, 382 F. Supp. 187, 192 (D. Md. 1974).

Plaintiffs essentially allege an ongoing violation of the environmental statutes in question.  As the United States Court of Appeals for the Fourth Circuit noted in *Sasser v. Administrator, U.S. Envtl. Prot. Agency*, "[e]ach day the [embankment] remains in the wetlands without a permit constitutes an additional day of violation."  990 F.2d 127, 129 (4th Cir. 1993). Plaintiffs note that "injunctive relief regarding current and further discharges remains necessary under the CWA and RHA where failure to grant an injunction would likely result in irreparable injury and other legal remedies are inadequate."  (Pls.' Opp'n Mot. Dismiss 8.)  Finally, some of the injunctive relief sought by Plaintiffs involves restoration of the Site, so even if the violations had ceased, this Court could still order an injunction to remedy past harm.  Viewing the facts in a

light most favorable to the Plaintiffs, the "allegedly wrongful behavior" is not only "reasonably expected" to occur, but will undoubtedly occur until the structure is removed. Accordingly, Plaintiffs' claims and requests for injunctive relief are not moot.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss Plaintiff's claim for injunctive relief is DENIED. A separate Order follows.


Dated:  December 20, 2006                                     /s/                                                          
                                                              Richard D. Bennett
                                                              United States District Judge